FILED IN OPEN COURT
U.S.D.C. Atlanta

JAN 2 4 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INFORMATION |
| v. | : | |
| | : | NO. 1:14-CR-026 |
| THOMAS ALLEN DYE; | : | |
| NICHOLAS ANTHONY NARBONE; AND | : | |
| THOMAS PACE; | : | |
| | : | |
| DEFENDANTS | : | |

THE UNITED STATES ATTORNEY CHARGES THAT:

1.      From in or about August 2010, through on or about August 21, 2012, the exact dates being unknown, in the Northern District of Georgia and elsewhere, defendants THOMAS ALLEN DYE, NICHOLAS ANTHONY NARBONE, and THOMAS PACE, did willfully, knowingly and unlawfully combine, conspire, confederate, agree and have a tacit understanding with J.B. and others known and unknown to the United States Attorney, to commit certain offenses against the United States, including the following: to willfully, and for purposes of commercial advantage and private financial gain, infringe copyrights by reproducing and distributing, during a one hundred and eighty (180) day period, at least ten copies of one or more copyrighted works having a total retail value of more than $2,500 in violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1) and 2.

1

## Background

2.      It is relevant to this Information that, during the time period relevant to this conspiracy:

a.      Defendant NICHOLAS ANTHONY NARBONE operated an alternative online market, called "Appbucket," for the purpose of reproducing and distributing pirated copies of Android mobile device software applications (or "apps") to Appbucket subscribers in the Northern District of Georgia and elsewhere, and for purposes of commercial advantage and private financial gain by charging subscribers monthly or annual subscription fees.  Defendant NICHOLAS ANTHONY NARBONE also developed a computer program to circumvent and remove ("crack") the apps' technological protection measures designed to control access to, or copying of, the apps, so they may be copied and uploaded to Appbucket's computer servers without permission from the copyright owners.

b.      Defendant THOMAS ALLEN DYE was primarily responsible for searching for and obtaining pirated copies of copyrighted Android apps for Appbucket's computer servers, cracking the apps' technological protection measures designed to control access to, or copying of, the apps,

and then uploading pirated copies of the cracked apps onto Appbucket's computer servers.

c.    Defendant THOMAS PACE was primarily responsible for searching for and obtaining pirated copies of copyrighted Android apps for Appbucket's computer servers as well as uploading pirated copies of those apps onto Appbucket's computer servers.

d.    Conspirator J.B. was primarily responsible for writing the computer code necessary to operate the original Appbucket alternative online marketplace in 2010, under the web domain "www.appbucket.net." Conspirator J.B. also uploaded pirated copies of apps to Appbucket's computer servers.

<u>Manner and Means</u>

3.    The manner and means by which the conspiracy was carried out included, but were not limited to, the following:

a.    The object of the conspirators' illegal agreement was to unlawfully obtain, reproduce, and distribute copies of copyrighted works, namely, Android mobile device apps, through an alternative online market, called "Appbucket," without permission from the software developers and other owners of these copyrighted works, who would

otherwise sell lawful copies of the apps on legitimate Android online markets for a fee to the general public.

      b.    ~~It was a part of the conspiracy to obtain by various means~~ copies of the aforementioned apps that lacked any technological protection measures controlling access to, or copying of, the copyrighted software for the apps.  For example, conspirators circumvented or removed ("cracked") such access controls or copy controls on authorized copies of the apps, and did so without permission from the copyright owners of the apps.  Other conspirators reproduced and obtained over the Internet copies of apps that were already "cracked" by others – also without permission from the copyright owners.  For example, defendant NICHOLAS ANTHONY NARBONE paid defendant THOMAS PACE to purchase authorized copies of apps from a legitimate Android marketplace so defendant THOMAS ALLEN DYE and other conspirators could then crack and copy the apps, uploaded pirated copies of the apps to Appbucket's servers, and then reproduce and distribute pirated copies of the apps to Appbucket's subscribers through www.appbucket.net – all without permission from the copyright owners.

      c.    It was further a part of the conspiracy to rent computer servers, including servers located in the United States and Sweden, to host

one or more websites, such as "www.appbucket.net," and to provide

digital storage for pirated copies of copyrighted apps to allow conspirators

to upload, download, store, and ready pirated copies of copyrighted

Android apps for distribution to Appbucket subscribers.

      d.     It was further a part of the conspiracy to pay for and to

register Internet domain names for use by Appbucket subscribers,

including www.appbucket.net.

      e.     It was further a part of the conspiracy to distribute pirated

copies of the apps to Appbucket subscribers without authorization from

the copyright owners.  Through the Appbucket website,

www.appbucket.net, conspirators could distribute copies of the pirated

apps from Appbucket's computer servers directly to Appbucket's

subscribers' Android mobile devices.

      f.     It was further a part of the conspiracy to establish PayPal and

other bank accounts to receive the monthly and annual subscription fees

paid by Appbucket subscribers.  For example, between August 20, 2010

until December 17, 2010, defendant NICHOLAS ANTHONY NARBONE

received $61,763.48 in subscriptions to www.appbucket.net via the online

payment processor PayPal, and between December 18, 2010 until July 26,

2011, defendant NARBONE received approximately $20,596.00 in

subscriptions to www.appbucket.net via the online payment processor
Digital River. Defendant NICHOLAS ANTHONY NARBONE and
conspirator J.B. were both authorized users of Appbucket's online
payment accounts.  For example, conspirator J.B. logged into Appbucket's
Digital River online payment account on multiple occasions between
December 3, 2010 and June 29, 2011.  Likewise, between January 5, 2011
and March 9, 2011, defendant NICHOLAS ANTHONY NARBONE
initiated ACH transfers totaling approximately $8733 from Appbucket's
Digital River account to his personal bank account.

      g.    During and as a part of the conspiracy, the conspirators
distributed over one million (1,000,000) copies of copyrighted apps, with a
total retail value of over $700,000, to Appbucket subscribers and others, in
the Northern District of Georgia and elsewhere, all without authorization
from the software developers and other copyright owners of the apps.

Overt Acts

4.    In furtherance of this conspiracy, and to effect the objects and
purposes thereof, defendants and their co-conspirators committed the following
overt acts within the Northern District of Georgia and elsewhere, including but
not limited to the following:

a.      On August 10, 2010, defendant NICHOLAS ANTHONY NARBONE registered the web domain name www.appbucket.net with a domain registrar located in the Netherlands.

b.      On or about August 11, 2010, conspirator J.B. configured a server to utilize the www.appbucket.net web domain name and host copies of apps for Android mobile devices.

c.      On or about August 12, 2010, conspirator J.B. uploaded hundreds of megabytes of apps to the Appbucket server.

d.      On August 17, 2010, defendant NICHOLAS ANTHONY NARBONE changed the business name for his PayPal account to Appbucket.

e.      On August 19, 2010, defendant NICHOLAS ANTHONY NARBONE changed the e-mail address associated with his PayPal account from nnarbone@gmail.com to support@appbucket.net.

f.      On or about August 26, 2010, defendant NICHOLAS ANTHONY NARBONE provided conspirator J.B. a list of Appbucket subscribers to delete.  Conspirator J.B. confirmed that he would take care of deleting the subscribers.

g.    Between June 22, 2010 and December 5, 2010, defendant

NICHOLAS ANTHONY NARBONE sent conspirator J.B. approximately

~~$7,222.00 via the Appbucket PayPal account.~~

h.    Through on or about December 11, 2010, defendant

NICHOLAS ANTHONY NARBONE sent $11,269.00 from Appbucket's

PayPal account to defendant THOMAS PACE, in part for the purchase of

authorized copies of apps from a legitimate Android marketplace and for

the purpose of making pirated copies of those apps.

i.    Between on or about August 2010 and December 11, 2010,

defendant THOMAS PACE purchased apps from the Google marketplace,

made pirated copies of these apps, and uploaded them to Appbucket's

computer servers.

j.    On various dates in December, 2010, conspirator J.B.

configured the layout for receipts generated by eSellerRate for

subscriptions to www.appbucket.net.

k.    On December 25, 2010, conspirator J.B. composed and sent a

system wide email to Appbucket subscribers providing them with

subscription information and descriptions of new system features being

implemented.

l.      On January 3, 2011, defendant NICHOLAS ANTHONY NARBONE provided a signed document to eSellerRate authorizing deposits of proceeds from Appbucket's subscriptions to a Wachovia bank account in the name of defendant NICHOLAS ANTHONY NARBONE.

m.     On July 13, 2011, conspirator J.B. provided his bank account information to defendant NICHOLAS ANTHONY NARBONE for the purpose of receiving wire transfers.

n.      On August 9, 2011, an FBI undercover employee who was also an Appbucket subscriber, in the Northern District of Georgia, downloaded 1,309 copies of pirated apps from Appbucket's computer servers.

o.      On September 4, 2011, defendant NICHOLAS ANTHONY NARBONE emailed defendant THOMAS ALLEN DYE and offered to pay defendant DYE to upload copies of apps to Appbucket's computer servers.

p.      Between the dates of September 4, 2011 until on or about September 19, 2011, defendant THOMAS ALLEN DYE copied and uploaded pirated copies of apps to Appbucket's computer servers.

q.      On September 16, 2011, defendant THOMAS ALLEN DYE provided bank account information to defendant NICHOLAS ANTHONY NARBONE for the purpose of getting paid for copying and uploading apps to Appbucket's computer servers.

r.     On January 4, 2012, an FBI undercover employee who was also an Appbucket subscriber, in the Northern District of Georgia, downloaded 1,211 copies of pirated apps from Appbucket's computer servers

s.     On February 3, 2012, an FBI undercover employee who was also an Appbucket subscriber, in the Northern District of Georgia, downloaded 1,494 copies of pirated apps from Appbucket's computer servers.

All in violation of Title 18, United States Code, Section 371.

SALLY QUILLIAN YATES
  *UNITED STATES ATTORNEY*

CHRISTOPHER C. BLY
  *ASSISTANT UNITED STATES ATTORNEY*
Georgia Bar No. 064634
75 Spring Street, S.W., Suite 600
Atlanta, Georgia 30303   (404) 581-6000


MYTHILI RAMAN
  *ACTING ASSISTANT ATTORNEY GENERAL*

JOHN H. ZACHARIA
  *ASSISTANT DEPUTY CHIEF FOR LITIGATION*
District of Columbia Bar No. 456867
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C.  20530   (202) 305-2310