IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NICHOLAS NARBONE, BOP ID# 65751-019, | PRISONER HABEAS CORPUS 28 U.S.C. § 2255 |
| Movant, | |
| v. | CIVIL ACTION FILE NO. 1:18-cv-5302-AT-JKL |
| UNITED STATES OF AMERICA, | CRIMINAL ACTION FILE NO. 1:14-cr-0026-AT-JKL |
| Respondent. | |

**FINAL REPORT AND RECOMMENDATION**

Movant, confined in the Federal Correctional Institution in Talladega, Alabama, submitted a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate"). [Doc. 98.] The Government has filed a response. [Doc. 105.] For the reasons set forth below, the motion to vacate should be **DENIED**.

**I.   BACKGROUND**

In August of 2012, FBI-Atlanta executed search warrants in several states in connection with an investigation of three websites selling pirated Android mobile device software applications ("apps"). Owners and operators of the websites as well as coders and others identified as site support personnel were interviewed but not

arrested. Movant was one of the individuals interviewed regarding his connection to a website called AppBucket.

AppBucket reproduced and distributed pirated copies of apps to its subscribers. [Doc. 37 at 9.] AppBucket provided copies of apps that were available for free in the legitimate marketplace and apps that were only available for purchase. [*Id.*] Based on the investigation, the interviews conducted, and records seized, agents identified Movant as the chief operator of AppBucket. [*Id.* at 9-10.]

During his interview with FBI agents on August 21, 2012, Movant admitted that he bought and ran Appbucket.net and had been involved with it since March of 2012. [Doc. 37 at 9-10.] Movant further admitted that he charged users subscription fees to download pirated apps from the site, and that he knew what he was doing was illegal. [*Id.* at 10-11.]

On January 24, 2014, Movant waived indictment and was charged by information, along with two co-conspirators, with conspiracy to reproduce and distribute copyright infringing works with a value of more than $2,500 in a 180-day period in violation of 17 U.S.C. § 506(1)(A) and 18 U.S.C. § 2319(b)(1) and (2). [Doc. 6.] The Information described a conspiracy involving the commercial distribution of pirated apps with a retail value of over $700,000 through the AppBucket website. [*Id.*]

On March 24, 2014, Movant pled guilty to the Information pursuant to a plea agreement negotiated on his behalf by his attorney, Matthew Kilgo.  [Doc. 27.] Movant was represented at the change of plea hearing by Octavio Padron, who applied for admission to the Northern District one week before the hearing.  [Docs. 24, 26.]  At the plea hearing, Movant stated he understood that he faced a maximum punishment of 5 years in prison.  [Doc. 37 at 11.]  In the plea agreement, which Movant affirmed under oath that he had read and understood, Movant

> voluntarily and expressly waive[d] the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court.

[*Id.* at 18-19.]  Movant remained on bond.  [*Id.* at 20.]  Movant's co-defendants also pled guilty to conspiracy to commit copyright infringement.  [Docs. 22, 31.]

Movant's sentencing, which had been scheduled for July 8, 2014, was rescheduled for October 17, 2014.  [Doc. 28.]  With Movant cooperating in a related and ongoing prosecution, 1:14-cr-228-AT-AJB, his sentencing was rescheduled several times.  [Doc. 55.]

While out on bond and awaiting sentencing, Movant was arrested on May 25, 2017, in Orange County, Florida for petty theft.  Movant had allegedly redirected

$5,011.82 in customer payments from his employer, a golf instruction website. [Doc. 61 at 2.] On July 26, 2017, the Court ordered Movant to show cause why his pretrial bond supervision should not be revoked. On August 18, 2017, the undersigned held a bond revocation hearing and modified Movant's pre-trial bond supervision to include further restrictions, including electronic monitoring. [Docs. 64-65.] Sentencing was reset to March 15, 2018.

The Probation Office issued its final PSR the week before the scheduled sentencing, finding a base offense level of 8, an infringement amount of $754,519.21, which resulted in a 14-level increase, plus two levels for an offense involving the manufacture or uploading of infringing items, and a 4-level increase for role in the offense. [Doc. 70 at 1.] The Probation Office also recommended no decrease for acceptance of responsibility due to Movant's May 2017 arrest and its reflection on his unwillingness to terminate or withdraw from criminal conduct.

The Government filed a sentencing memorandum supporting a four-level increase for Movant's role as an organizer or leader in an offense involving five or more participants under §3B1.1(a). [Doc. 70 at 2.] The Government further argued that Movant was not entitled to a downward adjustment for acceptance of responsibility because of the pending criminal charges in Florida. [*Id.* at 4-5; Doc.

70-1 at 2.] The Government also filed a motion for downward departure based on Movant's substantial assistance. [Doc. 69.]

On March 15, 2018, the sentencing hearing was held. Defense counsel objected to the recommendation that Movant not receive a reduction for acceptance of responsibility. [Doc. 87 at 9-13.] The Court sustained his objection. [*Id.* at 13-14.] When the Court found that Movant was entitled to a two-level reduction for acceptance of responsibility, counsel for the Government recommended that he be given a third level reduction as well. [*Id.* at 14.]

Defense counsel also objected to the PSR's recommendation that Movant be given four-level increase based on his role in the offense. [Doc. 87 at 3, 14-16.] The Court denied this objection. [*Id.* at 21.] The Court granted the Government's request for a five-level reduction based on substantial assistance. [*Id.* at 24.] The Government further requested that the Court depart from the final guidelines range of 33 to 41 months in prison and recommended a sentence of 30 months. [*Id.* at 26.]

The Court ultimately imposed a below guidelines sentence of 12 months and one day in prison, 30 months' supervised release, a $100 special assessment, and 50 hours of community service. [Doc. 87 at 61; 65-66.] Movant was allowed to voluntarily surrender on November 29, 2018. [Doc. 101.]

Movant filed a Notice of Appeal on March 27, 2018. [Doc. 79.] On July 26, 2018, the Eleventh Circuit granted the Government's motion to dismiss the appeal based on the appeal waiver contained in Movant's plea agreement. [Doc. 93.]

On November 16, 2018, approximately two weeks before he was required to voluntarily surrender, Movant filed the motion to vacate now before the Court. [Doc. 98.] Movant raised the following grounds for relief: (1) the Government breached the plea agreement and violated § 1B1.8 when it filed a sentencing memorandum and successfully argued for an increase in Movant's advisory guidelines range using self-incriminating information Movant disclosed while testifying against a conspirator; (2) the Government breached the plea agreement by failing to recommend a one-level downward variance for expeditiously entering a guilty plea; (3) the Court violated §1B1.8 when it calculated Movant's sentencing guidelines range using self-incriminating information Movant disclosed during a proffer session and as part of his plea agreement with the Government; (4) the Court violated Movant's right to due process when it failed to provide him with the PSR within 35 days of the sentencing hearing in violation of Federal Rule of Criminal Procedure 32(e)(2); (5) the Court violated Movant's right to due process when it predicted and then disclosed his maximum sentence of one year and one day two months prior to the acceptance of the plea agreement, causing Movant to enter into his plea

involuntarily; (6) ineffective assistance of counsel for failure to raise the Government's breach of the plea agreement; and (7) ineffective assistance of counsel for failure to submit a sentencing memorandum, failure to challenge the aggravating role enhancement, failure to seek a downward departure, failure to file objections to the PSR, refusal to file a notice of appeal, failure to complain of the Government's breach of the plea agreement, and failure to respond to or acknowledge the Government's sentencing memorandum. [Doc. 98 at 1-2.]   The Government filed its response to the motion to vacate on January 22, 2019.  [Doc. 105.]

## II.   DISCUSSION

### A.   The Standard for Relief Under § 2255

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is otherwise subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally

convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 267 (2015). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

### B. Movant's Claims Are Barred by the Appeal Waiver

In connection with his plea agreement, Movant agreed to a waiver of his right to appeal or collaterally attack his sentence in any post-conviction proceeding on any ground. The only exception to the waiver was the right to file a direct appeal of an upward departure or variance above the sentencing guideline range calculated by the Court. [Doc. 27-1 at 16.] Movant's sentence of one year and one day fell below the calculated guidelines range of 33 to 41 months. [Doc. 37 at 18-19.]

An appeal waiver, including a waiver of the right to collaterally challenge a sentence via § 2255, must be enforced if it is made knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). The waiver is knowing and voluntary if either: "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record

that the defendant otherwise understood the full significance of the waiver." *Williams*, 396 F.3d at 1341 (quotation marks omitted).

A valid appeal waiver entered into freely and voluntarily pursuant to a negotiated plea agreement precludes the defendant from challenging the Court's determinations at sentencing, *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001), and from attacking his sentence through a claim of ineffective assistance of counsel at sentencing, *Williams*, 396 F.3d at 1342.

In the instant case, the Court specifically addressed the negotiated appeal waiver with Movant when he entered his plea. First, the prosecutor read aloud the key terms of the plea agreement, including the appeal waiver:

> The defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court. If the Government initiates a direct appeal of the sentence imposed, the defendant may file a cross-appeal of that same sentence.

[Doc. 37 at 18.] The Court then questioned Movant about the appeal waiver:

> THE COURT: Mr. Narbone, in the plea agreement, you are giving up a substantial scope of your appeal rights. That means absent limited circumstances identified in the plea agreement, you would not be able to contest the sentence even if you were unhappy with it. Do you understand that?
>
> THE DEFENDANT: Yes.

[*Id.*] In addition, the Court questioned Movant about the voluntary nature of his plea and his satisfaction with counsel. [Doc. 37 at 3-4.] Movant confirmed that he had not had any "alcohol, pills, medication, or drugs of any kind" in the prior 24 hours. [*Id.* at 4.] The Court explored Movant's rights in detail and made sure he understood the rights he was giving up by pleading guilty. [*Id.* at 5-7.] Movant confirmed that he understood the charges against him. [*Id.* at 8-9.] Movant did not object to the Government's summary of the evidence against him. [*Id.* at 9-11.] Movant understood the maximum sentence he could receive was 5 years. [*Id.* at 11.] Movant also stated that he had discussed the decision to plead guilty with his attorney and that he was satisfied with his attorney's services. [*Id.* at 19.] Movant had no questions for the Court or his attorney. [*Id.*]

A review of the colloquy between Movant and the Court reveals that Movant's waiver of the right to challenge his sentence – either on appeal or collaterally – was made knowingly and voluntarily. Accordingly, the undersigned finds that Movant voluntarily and intelligently waived his right to appeal his conviction and sentence and to pursue any other collateral post-conviction relief. Thus, Movant's § 2255 motion is barred by his valid appeal waiver. *Bascomb,* 451 F.3d 1292, 1294 (11th Cir. 2006); *Williams*, 396 F.3d at 1342; *Weaver*, 275 F.3d at 1333.

## IV.   CERTIFICATE OF APPEALABILITY ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

It is not reasonably debatable that Movant's claim lacks merit. Because Movant has not substantially shown that he was denied a constitutional right, a COA is not warranted. *See* 28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 483-84.

## V.   CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to vacate be **DENIED**.  [Doc. 98.]  The undersigned further recommends that a COA be **DENIED**.  The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**SO RECOMMENDED** this 28th day of March, 2019.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE